ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| RUDY MAISONET CHÉVERE<br><br>Recurrida<br><br>v.<br><br>CENTRO PRAY THE LORD, INC.<br><br>Peticionaria | **TA2026CE00556** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm.: CA2025CV00772<br><br>Sobre: Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 4 de junio de 2026.

Comparece ante nos Centro Pray The Lord, Inc. (Centro o "parte peticionaria") y nos solicita que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, notificada el 8 de abril de 2026. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* a la solicitud de desestimación instada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** el auto de *certiorari* solicitado.

### I.

El 12 de marzo de 2025, el Sr. Rudy Maisonet Chévere (señora Maisonet o "la recurrida") presentó una *Demanda* sobre daños y perjuicios en contra de la parte peticionaria.[1] En esta, esbozó que era el padre de Damaris Maisonet Ferrera (señora Damaris), quien había sido diagnosticada con esquizofrenia y recibía

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

asistencia de la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA). Señaló que, luego de que la señora Damaris hubiera ingresado al Centro, comenzó a deteriorarse rápidamente y a mostrar hematomas inexplicables. Añadió que, aun cuando le notificó a ASSMCA en abril de 2022, hicieron caso omiso. El 13 de agosto de 2023, la señora Damaris falleció en el Centro. Arguyó que, la parte peticionaria le negó a proveer la causa de muerte y tampoco constaba en el certificado de defunción, por lo que, el cuerpo había sido trasladado al Instituto de Ciencias Forenses (ICF). Así pues, indicó que el 29 de mayo de 2024, el ICF le entregó el informe de autopsia (Informe Médico - Forense ICF-2023-05616), el cual determinó que la causa de muerte se debió a complicaciones de trauma a la cabeza, identificó, además, trauma corporal externo e interno, entre otros hallazgos patológicos. Por ello, le imputó al Centro negligencia y falta de supervisión. Consecuentemente, reclamó una cuantía por graves daños físicos y angustias mentales que estimó en $500,000.00.

El 5 de mayo de 2025, la parte peticionaria presentó su *Contestación a la Demanda*.[2] En esencia, negó la mayoría de las alegaciones y planteó varias defensas afirmativas, entre ellas, que la causa de acción estaba prescrita, y falta de parte indispensable.

Luego de varias incidencias procesales, el 26 de noviembre de 2025, el Centro presentó una *Moción de Desestimación Enmendada*.[3] En esta, alegó que, desde el 18 de enero de 2024 el ICF había terminado el Informe

---

[2] *Contestación a la Demanda*, entrada núm. 7 en SUMAC.
[3] *Moción de Desestimación Enmendada*, entrada núm. 36 en SUMAC. El 17 de noviembre de 2025, la parte peticionaria presentó una *Moción de Desestimación*. Véase, *Moción de Desestimación*, entrada núm. 31 en SUMAC.

Médico Forense, y el señor Maisonet no había sido diligente en obtenerlo. Por ello, enfatizó que el recurrido tenía hasta el 17 de enero de 2025 para presentar su causa de acción, sin embargo, al haber sido presentada el 12 de marzo de 2025 fue en exceso del término para presentarla bajo la doctrina de conocimiento del daño causado por una acción u omisión negligente. Consecuentemente, resaltó que la demanda estaba prescrita. De otra parte, arguyó que el recurrido no había traído al pleito a ASSMCA, ni al Doctor Hospital, partes indispensables en el pleito. Por ello, procedía la desestimación con perjuicio de la demanda.

En desacuerdo, el 8 de diciembre de 2025, el señor Maisonet presentó su Oposición a Moción de Desestimación Enmendada, junto con la moción presentó el *Recibo del Protocolo de Autopsia*; y el *Informe Médico – Forense ICF-2023-05616*.[4] En síntesis, esbozó que desde noviembre de 2023 hasta mayo de 2024 estuvo realizando llamadas bisemanales solicitando el estado del informe; y no fue hasta el 29 de mayo de 2024, fecha cuando el ICF le hizo entrega de la autopsia realizada a la señora Damaris, que advino en conocimiento del daño. Asimismo, sostuvo que realizó varias notificaciones que constituían reclamaciones extrajudiciales para interrumpir el plazo prescriptivo, entre ellas, la notificación a ASSMCA en abril de 2022, y la querella inicial ante el ICF, el 16 de agosto de 2023. En cuanto a la falta de parte indispensable, señaló que la negligencia primaria iba dirigida al Centro, y no a ASSMCA, quien solo

---

[4] *Oposición a Moción de Desestimación Enmendada*, entrada núm. 45 en SUMAC. El 17 de noviembre de 2025, el señor Maisonet presentó su *Oposición a Moción de Desestimación*. Véase, entrada núm. 33 en SUMAC.

subvencionó; ni contra el Hospital quien atendió post-evento. Por lo tanto, solicitó se denegara a moción de desestimación instada por el Centro.

Posteriormente, el 3 de febrero de 2026, el foro primario notificó una *Orden*, mediante la cual convocó a las partes a una vista evidenciaria para adjudicar la defensa de prescripción invocada en el pleito, para el 7 de abril de 2026.[5]

Así pues, el 7 de abril de 2026, fue celebrada una *Vista Evidenciaria*.[6]

El 8 de abril de 2026, el foro primario notificó la *Resolución* recurrida, mediante la cual declaró *No Ha Lugar* a la solicitud de desestimación instada por la parte peticionaria.[7] Concluyó que, el Centro no presentó prueba adicional que le permitiera concluir que el recurrido el día del fallecimiento sabía el daño por el cual reclamaba y quien se lo había causado. Así pues, indicó que la parte peticionaria no satisfizo el peso de la prueba necesario para concluir que la demanda estaba prescrita. Por ello, resaltó que, ante la falta de prueba expuesta, el recurrido no tenía la obligación de demostrar que tenia conocimiento del daño y de su autor en una fecha distinta a la alegada por el Centro.

Inconforme, el 6 de mayo de 2026, la parte peticionaria presentó el recurso de epígrafe en el que planteo el siguiente señalamiento de error:

> ERRO el TPI al declarar no ha lugar la defensa afirmativa de prescripción cuando de la propia demanda presentada por la demandante se desprende que la demandante conocía de los daños que reclama antes del fallecimiento de su hija el 13 de agosto de 2023 y no haberse pronunciado sobre la

---

[5] *Orden*, entrada núm. 56 en SUMAC.
[6] *Minuta*, entrada núm. 57 en SUMAC.
[7] *Resolución*, entrada núm. 58 en SUMAC.

defensa afirmativa de partes indispensables.

El 7 de mayo de 2026, emitimos una *Resolución* mediante le concedimos a la parte recurrida el término de quince (15) días para que se expresara sobre los méritos del recuro.

Luego de una solicitud de prórroga, el 20 de mayo de 2027, el señor Maisonet presentó su *Escrito en Cumplimiento de Orden*.

Contando con la comparecencia de las partes, procedemos a atender el recurso de epígrafe.

## II.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior, *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194 (2023). Mediante este recurso, se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *800 Ponce de León Corp. v. AIG,* 205 DPR 163, 174 (2020). La discreción ha sido definida por nuestro Tribunal Supremo como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *800 Ponce de León Corp. v. AIG.*

El examen del *certiorari* no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra.* A esos efectos, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita la autoridad del Tribunal de Apelaciones para expedir un

recurso de *certiorari* y revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Cabe resaltar que esta regla limitó los asuntos interlocutorios que el Tribunal de Apelaciones podía revisar por entender que estos podían esperar hasta la conclusión del caso para ser revisados en apelación. *800 Ponce de León v. AIG*, *supra*. A manera de excepción, se podrá expedir este auto discrecional cuando: (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, (2) en asuntos relacionados a privilegios evidenciarios, (3) en casos de anotaciones de rebeldía, (4) en casos de relaciones de familia, (5) en casos revestidos de interés público, o (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. *800 Ponce de León v. AIG*, supra.

El propósito de esta Regla es evitar la dilación que causaría la revisión judicial de las controversias que podrían esperar a ser planteadas en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation,* 202 DPR 478, 486 (2019). Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada*, In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, establece ciertos indicadores a tomar en consideración para evaluar si se debe o no expedir un recurso de *certiorari.* La precitada regla dispone los siguientes criterios:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd*.

Distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. *Pueblo v. Díaz de León,* 176 DPR 913, 918 (2009). En nuestro ordenamiento jurídico impera la norma de que un Tribunal Apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. *García v. Asociación*, 165 DPR 311, 322 (2005). Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación al foro primario.

Por otro lado, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con

el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

### III.

En el caso de autos, el Centro alega que incidió el foro primario al denegar desestimar la demanda, aun cuando se desprende que el recurrido conocía de los daños desde antes del fallecimiento de la señora Damaris el 13 de agosto de 2023; y por no pronunciarse sobre la defensa afirmativa de falta de parte indispensable. Arguye que, el informe médico-forense fue terminado el 18 de enero de 2024, por lo que, el señor Maisonet tenía hasta el 17 de enero de 2025 para presentar la demanda. Añade que, el recurrido no fue diligente para obtener el informe, consecuentemente, la demanda estaba prescrita. Por último, sostiene que faltan partes indispensables en el pleito, entiéndase: ASSMCA, por haber sido quien proveyó el Hogar a la señora Damaris y quien licencia y paga los servicios a los centros de cuido. A su vez, al Doctor Hospital, dado que la asistencia médica ofrecida no fue la adecuada.

Por su parte, el señor Maisonet alega que el foro primario aplicó correctamente las normas sobre prescripción, y se limitó a resolver la controversia que verdaderamente tenía ante su consideración. Señala que, luego de celebrada la vista evidenciaria el foro *a quo* concluyó que la parte peticionaria no satisfizo el peso de la prueba necesario para concluir que la demanda de epígrafe está prescrita. Reitera que, advino en conocimiento de la causa de muerte de su hija y de la parte que fue responsable, el 29 de mayo de 2024, cuando el ICF completó y entregó el informe médico-forense. Finalmente, en cuanto al planteamiento sobre partes

indispensables, el recurrido menciona que la Orden emitida por el foro primario sobre la vista del 7 de abril de 2026, era para adjudicar la defensa de prescripción. Por ello, resalta que en ningún momento el foro recurrido afirmó resolver sobre la defensa de partes indispensables. Así pues, solicitó se denegara la petición de *certiorari* instada por el Centro.

Tratándose de la denegatoria de una moción de carácter dispositivo, estamos facultados, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, para revisar la determinación recurrida mediante un recurso de *certiorari*. No obstante, la expedición de un recurso de *certiorari* sigue siendo una decisión discrecional, la cual debemos ejercer tomando en consideración los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Por lo tanto, evaluado el recurso ante nuestra consideración, concluimos que no existen motivos que justifiquen que ejerzamos nuestra función revisora en esta etapa de los procedimientos. No surgen indicios de que haya mediado prejuicio, parcialidad o error craso y manifiesto por el Tribunal de Primera Instancia. La disposición de la decisión recurrida tampoco es contraria a derecho.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** la expedición del auto discrecional solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones